UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBECCA DERMINER,
ELIZABETH DERMINER, ROBIN
DERMINER, and AMY VALLANDI,

      Plaintiffs,

                                                   Civil No. 04-74942
                                                   Hon. John Feikens
                                                   Magistrate Judge Mona Mazjoub

      v.

WAYNE & MARGARET KRAMER,
MICHAEL & ANGELA DAVIS,
DENNIS THOMPSON,
MUSCLETONE RECORDS, INC., and
SVENGIRLY MUSIC, INC.,

      Defendants.

_____/

**OPINION AND ORDER**

      Plaintiffs, the heirs of Robert Derminer (also called Rob Tyner) of the Detroit band the "MC5", move for a preliminary injunction. Magistrate Judge Majzoub issued a report and recommendation recommending I deny this motion in its entirety. Plaintiffs make nine objections to this report and recommendation.

      For the reasons explained below, I find that jurisdiction has been called into question,[1]

---

[1] A court always has jurisdiction to determine its jurisdiction, and its findings on jurisdictional issues are valid and entitled to *res judicata* effect, even if the court determines it has no jurisdiction. E.g., William W. Schwarzer, A. Wallace Tashima, and James M. Wagstaffe, Federal Civil Procedure Before Trial, 2:21 (2005).
      This Court also has before it Plaintiffs' Motion for Leave to File Excess Pages, which Defendants oppose. Because the brief contains discussion of issues that bear on jurisdiction, I GRANT Plaintiffs' motion, although I agree that this case has been briefed at length. I also

and thus, it is not yet appropriate for me to either adopt or reject the magistrate's recommendation as to the motion. However, as discussed below, I do adopt many proposed factual findings of the magistrate that bear on the question of jurisdiction, and find that I cannot hear the claims in this case due to a lack of subject matter jurisdiction.

**FACTUAL BACKGROUND**

The factual background of this case was well stated by Magistrate Judge Majzoub in the section of her report entitled "Background," and no objection regarding that section was filed. I adopt that section of the report in its entirety, and for reasons of economy will not restate those facts here. I will explore two factual issues: (i) what copyrights have been identified in any filings as being at issue, and (ii) what evidence of ownership was elicited in evidentiary hearings.

**I. Copyrights at Issue**

The Complaint, filed on December 20, 2004, identified registration numbers for 13 copyrighted works.[2] Approximately one month later, Plaintiffs filed their Motion for a

---

remind Plaintiffs that it is not appropriate to raise new claims in a reply brief, which is "[a] brief that responds to issues and arguments raised in the brief previously filed by one's opponent." United States v. Robinson, 366 F. Supp. 2d 498, 504 (E.D. Mich. 2005) (quoting Black's Law Dictionary (7th ed. 1999)).

[2] Namely, "Kick out the Jams," "Come Together," "Rocket Reducer," "Borderline," "Starship," "Tonight," "Teen-age Lust," "Let Me Try," "High School," "Call Me Animal," "American Ruse," "Shakin' Street," and "Human Being Lawnmower." (Patent, Trademark, or Copyright Information; Compl., Exh. A.) I also note that although the Information submitted with the Complaint claimed either Robert Derminer or the Plaintiffs minus Amy Vallandi as the "author of work," Exhibit A to the Complaint listed as Claimants people other than Plaintiffs or Robert Derminer for "Rocket Reducer," "Borderline," "Starship," and "High School," and on all other songs, credited not only Robert Derminer, but also Defendants or Defendants' decedents for words and music.
     Finally, I note that the Complaint did name a larger number of songs for which a sound recording copyright was at issue. However, Plaintiffs counsel later stated that for the sound recording copyrights, as opposed to the musical composition copyrights, the Plaintiffs now

Preliminary Injunction, which stated that Plaintiffs held interest to copyrights "including" the 13 works in the Complaint, but mentioned by name only one other work, "Future Now." The second supplemental affidavit of Rebecca Derminer claimed that copyrights were renewed in the original 13 works identified in the Complaint.[3] (Second Supp. Aff., ¶ 4.) Certificates for those 13 works were offered as an exhibit by Plaintiffs during the evidentiary hearings. (Ex. 1.) The second affidavit also stated that "Future Now" was registered as a copyright[4] in the name of Cotillion Music, listing Robert Derminer as the sole author. (¶ 5.) Other than the 13 works plus "Future Now", Plaintiffs do not specifically allege registration has occurred.

What Plaintiffs have submitted regarding "Future Now" is an application for the copyright mailed with the appropriate check on Mar. 1, 2005. (Second Supp. Aff. of Rebecca Derminer, Exh. C.) The exhibits to the second affidavit also indicate that in addition to "Future

---

concede they did not have a federal law cause of action for those recordings produced in the 1968 to 1972 period, and that for any remaining sound recordings, they had submitted applications for registration, but not certificates of registration or registration numbers for those copyrights. (Tr. of May 6, 2005 hearing at 36-37.) Therefore, the above discussion of which copyrights are named in the Complaint is a discussion of the musical composition copyrights only.

[3] The affidavit actually identified 14 song titles: the Complaint's 13, plus "Rama Lama Fa Fa Fa." Plaintiffs did offer as an exhibit at the evidentiary hearing a certificate of registration renewal for "Rocket Reducer No. 62 (Rama Lama Fa Fa Fa)", but not a certificate of registration identifying either song separately, so I will assume the affidavit mistakenly listed them individually when they are in fact the same work. I also note that Plaintiffs' Motion for Leave to File this affidavit is opposed by Defendants. Because this affidavit bears on the issue of jurisdiction, and because I believe the magistrate did consider it in her factual discussion (see p. 6 of slip report and recommendation, reference to 22 compositions), I GRANT the leave to file it.

[4] I note that Plaintiffs have not moved to amend their Complaint to add "Future Now" or any other work. I also note that "Future Now" was not one of the works for which Plaintiff provided a certificate of registration during the evidentiary hearings. (See Tr. of Mar. 8 hearing, 36.)

3

Now," on the same date, Plaintiffs applied for copyrights, and paid the appropriate fees, for 21 other works– the 13 songs named in the Complaint, and eight others: "Looking at You," "Sister Anne," "Baby Won't Ya," "Miss X,""Gotta Keep Movin'," "Poison," "Over and Over," and "Skunk." Id.

To sum up, Plaintiffs named 13 works when the Complaint was filed, and for those 13 works, they provided both registration numbers (filed with the Complaint) and certificates of registration (exhibits in the evidentiary hearings).  Although not named in the Complaint, the song "Future Now" is identified by name in the Motion for a Preliminary Injunction, but Plaintiff submitted no certificate of registration or registration number.  Plaintiffs did submit a sworn affidavit that "Future Now" was registered (although the affidavit does not state the date on which this occurred), and provided proof that Plaintiffs made a complete application for the copyright in that work several months after the Complaint was filed.  Finally, there are eight works named only in the second affidavit.  Although Plaintiffs have provided proof that a complete application for the copyright in those works made several months after the Complaint was filed, Plaintiffs do not specifically allege those copyrights were registered.

## II.  The Evidentiary Hearings: Issues of Ownership

### *1.  The March 8, 2005 evidentiary hearing*

At the evidentiary hearing on March 8, the magistrate opened with the following statement: "I think you understand that before we consider the merits of the Plaintiffs' motion for a preliminary injunction, which was filed with this Court, that th[is] Court is seeking to take evidence on whether Plaintiff can establish that this Court has jurisdiction over Plaintiffs' copyright and trademark claims. [...] [W]ith that understanding, how is it that you intend to

proceed today?" (Tr. at 5.) When Plaintiffs' counsel stated that he planned to provide a brief argument on their Motion for a Preliminary Injunction and then call Plaintiff Rebecca Derminer to establish jurisdiction, the magistrate reminded Plaintiffs' counsel that the preliminary injunction "is not what is at issue here today." (Tr. at 6.) In his first statement, Defendants' counsel argued that all copyrights had long ago been assigned to non-parties, and explicitly challenged standing. (Tr. at 19, 24.) When Plaintiffs' counsel called his witness, the magistrate again urged him to "be specific and not general with regard to which copyright interests" the witness was asserting ownership. (Tr. at 34.) The witness provided a great deal of testimony on issues not related to ownership, but did clarify that of the trademarks, musical composition copyrights, and sound recording copyrights at issue, the only interest she was alleging was not co-owned was the musical composition copyright to "Future Now."[5] (Tr. at 57.) After more testimony that did not touch on ownership, the magistrate cautioned the attorneys that the testimony had not reached many issues she had expected it to reach given the purposes of the evidentiary hearing, and that a further hearing would be necessary. (Tr. at 69.)

 *2. The May 6, 2005 evidentiary hearing*

The next hearing continued with the testimony of Plaintiff Rebecca Derminer. Derminer testified that various assignments had all ended before the time of the alleged infringement at the heart of her claims. (Tr. at 6, 23-4.) Derminer admitted to receiving royalty payments from non-party Warner Chappell since 1980 or 1981 to the present day, as songwriting royalties for work

---

[5]The magistrate made a proposed factual finding that "Future Now" was the only copyrighted work at issue that "may have been solely authored by the late Rob Tyner," and no party has objected to this finding, so I adopt it – the only copyright at issue potentially solely owned by Plaintiffs is therefore "Future Now." (Rep. and Recommendation at 6.) As a corollary, I find the remaining copyrighted works at issue are therefore co-authored and co-owned.

authored both singly and jointly by Robert Derminer.  (Tr. at 6-7, 23.)  Plaintiffs also offered as evidence of this an e-mail to Plaintiff Rebecca Derminer from Defendant Margaret Kramer stating that Warner Chappell monies were "publishing royalties on account of Rob's individual songwriting, not the collective contributions of the band."  (Pls.' Ex. 21; Tr. of May 6 hearing at 21.)  After some conflicting testimony, the witness also agreed that she had received several checks from non-party Alive Records, one from Defendant Wayne Kramer, and one from non-party Purity Accuracy.  (Tr. at 10-11.)

On the issue of the trademarks, Derminer then stated that she had no written agreement with the co-owners of the trademarks regarding permission to use the marks.  (Tr. at 16.)  She also admitted that while her husband had used the MC5 mark without the co-owners, she did not know if any royalties were ever paid by him to the co-owners of the mark.  (Tr. at 21.)

Following that testimony, the lawyers for both parties answered questions posed by the magistrate.  This portion of the hearing elicited that neither side was aware of any assignments in effect, including one to Warner-Chappell that would account for the royalty checks, but that both would conduct further investigation and provide any results.  (Tr. at 26.)  A later return to this subject elicited the admission from Plaintiffs' counsel that there was some evidence that the copyright for "Future Now" had been assigned to non-party Cotillion.  (Tr. at 34.)  Defendants' counsel stated that Warner-Chappell had registered the copyrights on the songs at issue, and to the best of their knowledge,[6] Warner-Chappell likely believes itself to be the owner of the copyrights.  (Tr. at 28.)  Plaintiffs' counsel did not explain the relationship that resulted in the

---

[6]The magistrate established that both sides attempted to contact non-party Warner-Chappell but their phone calls were not returned.  (Tr. at 27.)

royalty checks, but stated he did not believe Warner-Chappell's copyrights were valid, and that the Plaintiffs' registrations from 1999 that were introduced were in fact the valid copyrights. (Tr. at 29.) The magistrate asked Defendants' counsel for any proof of assignment, and Defendants' counsel stated he did not have any further evidence to introduce, but referred the court to Defendants' previously filed affidavits stating that all members of the MC5 had assigned the rights to Warner-Chappell at the time the songs were released, as well as a license that was submitted as an appendix to a brief. (Tr. at 31-32.)

**ANALYSIS**

Defendants have raised questions regarding Plaintiffs' standing to bring the claims, based on a dispute over whether Plaintiff has an ownership interest in the copyrights and trademarks at issue. However, I believe there is a superior question of jurisdiction: whether any of the claims in the Complaint present a federal question. Although the parties do not raise the subject matter jurisdiction issues directly, I have a responsibility to do so. Kontrick v. Ryan, 540 U.S. 443, 456 (2004) (citing Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884) (court must consider subject matter jurisdiction even if parties fail to raise it)). I will first address whether the Complaint meets the statutory jurisdictional requirement of 17 U.S.C. 411, and second, whether Plaintiffs present a federal question when the issue is whether co-owners have properly shared proceeds from their use of a work or mark.[7]

---

[7]Although there are several good arguments in favor of determining whether a plaintiff has a case or controversy before determining whether the (alleged) case is a federal one, I choose to address the issue of whether this Complaint presents a federal question before the issue of whether Plaintiffs standing. I do this in accord with the Supreme Court's teaching that courts should not pass on questions of constitutionality unless adjudication of the constitutional issue is necessary. Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 15 (2004). Because the determination of whether this case presents a federal question is essentially one determining the

Subject matter jurisdiction is typically determined on the pleadings. However, when a defendant asserts a factual attack as to the basis for subject matter jurisdiction, the court does not presume the truthfulness of factual allegations, but may consider evidence to resolve disputed jurisdictional facts.[8]  Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1224 (10th Cir. 2004); 15

---

scope of federal statutes, it is possible that I could find Congress never intended to give this Court the power to hear this case. In such a situation, I would not need to decide whether the case also meets the Constitutional case and controversy requirement on which the non-prudential standing doctrine is based. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-62 (1992) (constitutional basis of non-prudential standing). Therefore, it seems reasonable to address the federal question issue before the issue of whether Plaintiffs have the requisite personal interest.

Finally, while I have not discovered any precedent that addresses this question directly, the Sixth Circuit upheld a district court decision that determined (in the removal context) whether a federal question existed before addressing whether the plaintiff had standing to bring the case. Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410 (1998). In addition, one treatise implies that subject matter jurisdiction should be decided before standing. William Schwarzer, A. Wallace Tashima, and James M. Wagstaffe, Federal Civil Procedure Before Trial §2E:2100 (2005) ("Even if subject matter jurisdiction requirements are met, various doctrines may lead a federal judge not to hear the case [...] including: [] [s]tanding.")

[8]There is an objection to the use of affidavits in the Report and Recommendation, but that dispute centers around whether those affidavits can be used in a preliminary injunction context. Therefore, I note that my decision to consider affidavits in determining jurisdiction does not have bearing on Plaintiffs' objection.

The Supreme Court has allowed the use of affidavits in considering threshold questions of jurisdiction, namely standing. When a defendant asserts a factual attack as to the basis for standing, it is within the court's power to require a plaintiff to supply, by amendment to the complaint or by affidavit, further particularized allegations of fact deemed supportive of standing. Warth v. Selden, 422 U.S. 490, 501 (1974). When those affidavits are uncontradicted and offer sufficient allegations of fact, the court may find standing on that basis. See Friends of the Earth, Inc. v. Laidlaw, 528 U.S. 167, 183 (2000) (standing could be adequately documented through affidavits and deposition testimony); cf. Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990) (standing could not be based on the "conclusory allegations of an affidavit" when the affidavit did not contain specific factual allegations detailing injury). However, when the paper record submitted to the court is contradictory, the court should hold an evidentiary hearing to decide whether Plaintiff has demonstrated standing. 15 Moore's Federal Practice §101.34, citing United States v. BMW "I" Convertible, 235 F.3d 397, 400 (8th Cir. 2000); Bischoff v. Osceola County, Fla., 222 F.3d 874, 881 (11th Cir. 2000). Here, the paper record is contradictory, and two evidentiary hearings were held.

Moore's Federal Practice §101.34 (3d. ed.).  Plaintiff bears the burden of establishing jurisdiction.  Hedgepeth v. Tenn., 215 F.3d 608, 611 (6th Cir.2000).

**A.  Jurisdiction over Copyright Claims: Registration or Application Requirement**

This Court's subject matter jurisdiction over copyright infringement claims is explicitly limited by statute.  Lexmark Intern., Inc. v. Static Control Components, Inc., 387 F.3d 522, 533-4 (6th Cir. 2004).

> No action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.  In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement [...]  17 U.S.C. §411.

Here, Plaintiffs' Complaint alleges that registration was made in 13 works, and certificates for those works have been offered as evidence.  Therefore, the above rule does not bar my subject matter jurisdiction over claims of infringement of those works.  The remaining works at issue are more problematic.[9]

Although Plaintiffs' Complaint does not allege that "Future Now" has a registration certificate, a later affidavit by Plaintiff Rebecca Derminer does make that allegation, although that affidavit is accompanied by an application for the copyright by Plaintiffs.  (Second Supp. Aff. of Rebecca Derminer.)  The remaining works potentially at issue have no specific allegation of registration, and the only evidence before this Court shows that an application was made following the commencement of the suit.

---

[9]The failure to identify these works in the Complaint might bar my consideration of them as part of this case.  However, given that I find that even if they were appropriately pleaded, I would not have jurisdiction to hear them, I need not examine this question.

9

The Sixth Circuit has not taken a position on which of two interpretations of 17 U.S.C. 411 it prefers. The two approaches other courts have used are the "application approach" and the "registration approach." La Resolana Architects v. Clay Realtors Angel Fire, 416 F.3d 1195 (2005). The application approach finds subject matter jurisdiction when the date of a proper application precedes the date of filing; the registration approach finds subject matter jurisdiction only when the Copyright Office has either accepted or rejected such an application before the suit was filed. Id. Under either approach, because the registration certificates were dated before this action commenced, the 13 copyrights named in the Complaint satisfy the 17 U.S.C. 411 requirement.

Both approaches also come to the same conclusion for the eight works named only in the second supplemental affidavit. Plaintiffs fail to specifically allege registration, and they provide this Court with neither a certificate of registration nor a completed application dated before the Complaint was filed. For this reason, I find I have no subject matter jurisdiction over those copyright claims.

This leaves the question of whether the claims regarding the composition copyrights on "Future Now" can survive the strictures of 17 U.S.C. 411. The second supplemental affidavit alleging the copyright was registered[10] does not allege a date of registration. In addition, there is no allegation that Plaintiffs submitted an application to register "Future Now" before the Complaint was filed – the application submitted to the court was filed after the suit commenced,

---

[10]Plaintiffs' state that they have "undisputably registered copyrights as the owners or co-owners of the musical compositions [...] includ[ing] specifically "Future/Now[.]" (Reply to the Resp. to the Mt. for a Preliminary Inj., 3.) Because Plaintiffs failed to provide a date of registration or a registration number, much less a certificate of that registration, I find that allegation to be unsupported and therefore quite disputable.

so even the broader application approach cannot save the claim. Therefore, Plaintiff has not made sufficient allegations, even in later filings, to escape the limitations on my jurisdiction imposed by 17 U.S.C. 411. I find, therefore, that I do not have jurisdiction over claims regarding "Future Now."

**B. Jurisdiction over Copyright or Trademark Actions for an Accounting Between Co-Owners**

Plaintiffs allege copyright infringement under the Copyright Act, and trademark infringement and unfair competition under the Lanham Act. (Compl.) Both infringement counts allege a failure to account, and an accounting is one of the remedies sought. (Compl. ¶ 15, ¶ 23, and ¶ C.) However, "an action for infringement between joint owners will not lie because an individual cannot infringe his own copyright. The only duty joint owners have with respect to their joint work is to account for profits from its use." Weissmann v. Freeman, 868 F.2d 1313, 1318 (2d. Cir. 1989); 1-6 Nimmer on Copyright § 6-10. Thus, these actions are better understood as actions for an accounting, as both parties concede the 13 works and two trademarks named in the Complaint are jointly owned.

When one co-author of a work in statutory copyright or trademark claims to be entitled to an accounting of proceeds derived by other co-authors from authorized exploitation of the work or mark, federal courts have split over whether jurisdiction over such a matter is exclusive to the state courts (as a contract law matter) or exclusive to the federal courts (as a case arising under the Copyright Act or Lanham Act). Mother Waddles Perpetual Mission, Inc., et al., v. Frazier, 904 F. Supp. 603 (E.D. Mich. 1995) (J. Edmunds); Melvin B. Nimmer & David Nimmer, 3 Nimmer on Copyright §1201[A][1][b]. Neither the Sixth Circuit nor the Supreme Court has

11

taken a position on this issue. Mother Waddles, 904 F. Supp. at 607. Nimmer finds the exclusive federal jurisdiction view to be the better view. Nimmer, 3-1201[A][1][b].

The touchstone for this inquiry is the statement of Judge Friendly in T.B. Harms Co. v. Eliscu, which has been adopted in every Circuit to consider it: "The general interest that copyrights, like all other forms of property, should be enjoyed by their true owner is not enough" to warrant federal jurisdiction; some construction of the Copyright Act or Lanham Act must be necessary in order for a case to belong in federal court. 339 F.2d 823, 828 (2d Cir. 1964); Mother Waddles, 904 F.Supp. at 609. One court argued that when ownership of a copyright arises from authorship, it arises from the terms of the Copyright Act itself, but when ownership of a copyright arises from an assignment, it arises from state contract law. Merchant v. Levy, 92 F.3d 51, 55 (2d Cir. 1996).

I find this argument unpersuasive, however. I believe the same legal issues must be decided in cases where an author plaintiff sues a co-author for failure to account and cases in which a transferee plaintiff with all the rights an author possessed sues a co-author of the work for failure to account. In this case, no one disputes that Plaintiffs and Defendants share authorship in the works and marks named in the Complaint and are therefore authorized to make use of them. No one disputes that parties on both sides did make use of the same works and marks at some time. This is dispute that focuses on whether the true owners are all enjoying the profits from that property use. It does not raise issues like substantial similarity or whether a "fair use" has been made that require interpreting the Copyright Act. This is not a case about whether the marks are similar enough to create a likelihood of confusion that requires interpreting the Lanham Act. If federal courts have jurisdiction over this type of suit, then I see

few if any cases that the T.B. Harms v. Eliscu limitation would affect. Instead, I am persuaded that any federal law issues present in this case are not a "big deal" – they are incidental at best and absent altogether at worst. Maxey v. R.L. Bryan Co., 368 S.E.2d 466, 468 (S.C. Ct. App. 1988) ("the question boils to down to whether the aspect of the case which involves the Copyright Act is 'a big deal.'") (quoted approvingly by Nimmer §12.01[A][1][c]). For that reason, I find I do not have subject matter jurisdiction over the claims regarding the works and marks named in the Complaint.

**CONCLUSION**

I do not have jurisdiction to hear any of the claims in this case. I lack subject matter jurisdiction over all claims regarding coyrighted works for which Plaintiff provided no proof of registration or application before the suit was filed. I lack subject matter jurisdiction in "Future Now," because Plaintiffs have provided no proof of a registration or application dated before this suit was filed, and fail to even allege a date of registration of that work. Finally, I lack subject matter jurisdiction over the disputes over the fruits of ownership of the jointly-owned works and marks because these claims do not raise a federal question. Therefore, I DISMISS all claims for lack of jurisdiction. Fed. R. Civ. P. 12(b)(1).

**IT IS SO ORDERED.**

Date:  September 8, 2005               s/John Feikens
                                                             United States District Judge

Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on September 8, 2005, by U.S. first class mail or electronic means.

                                     s/Carol Cohron
                                     Case Manager